IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES AND TRACY PRICKETT, | ) ) ) | |
| Plaintiffs; | ) ) | |
| vs. | ) ) | 2:12-cv-0826-LSC |
| BAC HOME LOANS and BANK OF AMERICA, N.A., | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION

## I.    Introduction

Before the Court is a Motion to Dismiss, filed by the defendant, Bank of America, N.A. ("BANA" or "Defendant"[1]). (Doc. 23.) The issues raised in Defendant's motion have been fully briefed by all parties, and are now ripe for decision. For the reasons described below, Defendant's Motion to Dismiss is due to be GRANTED in part, DENIED in part, and partially DEFERRED to allow Plaintiffs an opportunity to amend their complaint.

_____

[1] Bank of America, N.A. is the successor by merger to BAC Home Loans Servicing, LP. Although both entities are named as defendants, because Bank of America, N.A. and BAC Home Loans are now a single, consolidated entity, this Court will refer only to BANA as the defendant.

## II.     Background

### A.     Procedural History

Charles and Tracy Prickett ("Plaintiffs"), along with four other unrelated couples, originally filed this action against BANA on March 14, 2012. (Doc. 1.) On June 4, 2012, BANA moved to dismiss every claim by all ten plaintiffs under Federal Rule of Civil Procedure 12(b)(6). (Doc. 4.) Before ruling on BANA's motion, the Court determined, after seeking input from the parties, that the ten plaintiffs were improperly joined under Federal Rule of Civil Procedure 20(a). Accordingly, the Court ordered the original action severed into five independent cases, mooted BANA's first motion to dismiss, and instructed Plaintiffs to file an amended complaint setting out only their individualized claims for relief. (Doc. 14.) Pursuant to the Court's directive, Plaintiffs filed an amended complaint on January 14, 2013 (the "Complaint"). (Doc. 22.) In the Complaint, Plaintiffs allege that after they defaulted or encountered difficulties meeting obligations on their mortgage, BANA improperly serviced their loan and defectively processed their modification application. Based on these alleged improprieties, Plaintiffs assert nine separate causes of action: (1) wrongful foreclosure, (2) slander of title, (3) wantonness, (4) fraud/intentional misrepresentation, (5) breach of contract, (6) negligence per se, (7)

breach of the covenant of good faith and fair dealing, (8) unjust enrichment, and (9) violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). BANA renewed its Motion to Dismiss on February 13, 2013, asking the Court to dismiss all nine claims for relief set out in the Complaint. (Doc. 23.)

**B.    Facts**[2]

Plaintiffs purchased their home at some point in 2007. (Doc. 22, ¶ 20.) Although the Complaint does not explicitly state that purchase was possible because of a mortgage loan secured by the property, the Court assumes as much since Plaintiffs allege they faithfully made their monthly mortgage payments for three years. (*Id.* ¶ 21.) In January 2010, Mr. Prickett was laid-off from his job as a result of the downturn in the economy. (*Id.* ¶ 22, 24.) Although Plaintiffs made their January payment as scheduled, recognizing the potential financial impact of the job-loss, Plaintiffs quickly contacted BANA to seek assistance in meeting their mortgage obligations.[3] (*Id.* ¶ 23.)

In February 2010, Plaintiffs were informed by a BANA representative over the phone that they qualified for a modification that would reduce their monthly mortgage

---

[2] For purposes of this opinion, the facts are accepted as alleged in Plaintiffs' Complaint. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Recitation of the facts alleged by Plaintiffs is not to be construed as a verification that the allegations are true.

[3] Although not stated in the Complaint, the Court presumes BANA was the entity servicing Plaintiffs' mortgage at the time.

payments by approximately $600, provided they successfully completed a trial plan. (*Id.* ¶ 25.) Although the terms of the modification and trial plan were not immediately set out in writing, Plaintiffs began tendering reduced payment amounts to BANA in accordance with their understanding of the arrangement. (*Id.* ¶ 26–27.) In September 2010, Plaintiffs received four separate loan modification packets, which they filled out and returned to the bank. (*Id.* at 28.) Then, in October 2010, Plaintiffs received a letter stating that BANA had "received the last installment due under our Special Forbearance Agreement." (*Id.* ¶ 29.) Plaintiffs later learned the "Special Forbearance Agreement" mentioned in the letter referred to the trial period of their loan modification. (*Id.* ¶ 29 n.2.)

Plaintiffs tendered, and BANA accepted, the reduced loan payments for approximately sixteen months, through June 2011. (*Id.* ¶ 30.) In July 2011, Plaintiffs once again timely submitted their reduced payment, but this time BANA returned the remittance. (*Id.*) When Plaintiffs inquired about why the July payment was returned, they were informed that BANA's records indicated that their loan was delinquent by $17,000. (*Id.* ¶ 33.) They were also instructed that their home would be sold at a foreclosure sale unless the arrearage was paid in full. (*Id.*) Upon further investigation, Plaintiffs learned that BANA's records indicated that no payment had been received

for April 2010, and as a result, BANA alleged they had defaulted under the terms of the plan. (*Id.* ¶ 37.) BANA additionally asserted that a letter was mailed to Plaintiffs in July 2010, stating that Plaintiffs' loan modification was declined as a result of the default. (*Id.* ¶ 35, 37.)

After Plaintiffs challenged the accuracy of BANA's records, it was determined that Plaintiffs had in fact made the April 2010 payment, but that BANA erroneously failed to post the payment to Plaintiffs' record. (*Id.* ¶ 39.) Nonetheless, while BANA conceded its error, it maintained that Plaintiffs were still in default because they had not timely appealed the July 2010 letter stating their modification had been declined. (*Id.* at 40.) Plaintiffs contend they never received the July 2010 letter. (*Id.* ¶ 36.) Moreover, Plaintiffs assert that even if such letter had been mailed, it would have been inconsistent with the letter Plaintiffs received in October 2010, which informed them that they had satisfied their payment obligations under the plan. (*Id.*) Unable to resolve the matter with the BANA, Plaintiffs filed the instant action.

## III.   Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's

complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In addition, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[4] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed."

---

[4] In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

*Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682).

## IV.    Discussion

## A.     Count One: Wrongful Foreclosure

Defendant argues that Plaintiffs' wrongful foreclosure claim fails as a matter of law because the Complaint does not allege that a foreclosure sale actually occurred. Plaintiffs offer no response to this argument, and therefore have effectively abandoned their wrongful foreclosure claim. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *see also Evans v. Jefferson County Comm'n*, 2012 WL 1745610, at *10 (N.D. Ala. May 15, 2012); *McMaster v. United States*, 177 F.3d 936, 940-41 (11th Cir.1999) (noting that a claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but he fails to present any argument concerning this claim to the district court).

Nonetheless, even if Plaintiffs had not abandoned their wrongful foreclosure claim, it would still fail to state a claim for which relief can be granted. Under Alabama law, a "mortgagor has a wrongful foreclosure action whenever a mortgagee *uses the power of sale* given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. and Loan*, 607 So. 2d 180, 182 (Ala. 1992) (emphasis added). In the instant action, Plaintiffs have not

alleged that their home was actually sold at a foreclosure sale, but rather assert that it was scheduled for sale. (Doc. 22, ¶ 42.) The Court has been unable to find any Alabama authority under which the mere scheduling of a foreclosure sale, without more, has been found to constitute a mortgagee's exercise of the power of sale. Faced with similar facts, the district court for the Southern District of Alabama concluded that a wrongful foreclosure action is not recognized in Alabama "unless a foreclosure actually takes place." *Hardy v. Jim Walter Homes, Inc.*, 2007 WL 174391, at *6 (S.D. Ala. Jan. 18, 2007). In the absence of authority to the contrary, the Court agrees with the decision in *Hardy* and finds that Plaintiffs' wrongful foreclosure claim does not state a claim upon which relief can be granted under Alabama law. Therefore, Plaintiffs' wrongful foreclosure claim is due to be dismissed.

### B.    Count Two: Slander of Title

Count Two of the Complaint asserts a state law claim for slander of title. The elements of slander of title under Alabama law are:

> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Merchants Nat. Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981) (citing *Womack*

*v. McDonald*, 121 So. 57, 59 (1929)).

The following assertions represent the whole of Plaintiffs' allegations related to their slander of title claim:

50. The Defendant, in filing a wrongful foreclosure has caused a cloud to be placed on the title of the property of the Defendant [sic].

51. The Defendant in subjecting the Plaintiff to its predatory 'Extend and Pretend' loan modification scheme has caused Plaintiff to lose title to their home."

52. Defendant's slandering of Plaintiffs' title, [sic] was the proximate cause of injuries and damages and Plaintiff claims all damages allowable under the law."

(Doc. 22 ¶ 50–52.) Defendant contends that these allegations fail to allege facts satisfying the elements of slander of title. Specifically, Defendant argues that Plaintiffs have not alleged publication to a third party, falsity of the publication, or that they suffered special damages.

The Court agrees that Plaintiffs' Complaint does not allege sufficient facts to make out a claim for slander of title under Alabama law. First, Plaintiffs have not adequately alleged publication to a third party. Plaintiffs have not provided, and the Court has not otherwise discovered, any authority indicating that alleging that a defendant "fil[ed] a wrongful foreclosure" is a sufficient allegation of publication to a third party. Plaintiffs contend that even if filing the foreclosure is not enough,

publication to a third party existed here because "defendant hired the law firm that advertised the sales." (Doc. 26 at 3.) In support of this argument, Plaintiffs attached a letter BANA mailed to Plaintiffs on August 2, 2011, which includes a notice of foreclosure and BANA's statement that the notice would soon be published in the Alabama Messenger.

An initial problem with Plaintiffs' argument is that it is insufficient to allege that BANA stated its intention to publish the notice of the foreclosure sale. Rather, Plaintiffs must allege that the publication actually took place. A second and perhaps more significant issue with Plaintiffs' position is that these allegations were not set out in the Complaint itself, but instead were first raised in Plaintiffs' brief in response to Defendant's motion to dismiss. "[A]nalysis of a Rule 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." *Starship Enterprises of Atlanta, Inc. v. Coweta Cnty.*, 708 F.3d 1243, 1253 (11th Cir. 2013) "[A] court may consider documents attached to the motion to dismiss" only if those documents "are referred to in the complaint and are central to the plaintiff's claim." *Id.* Plaintiffs failed to allege or refer to any facts in the Complaint demonstrating publication to a third party, and accordingly they have failed to state a claim for slander of title.

Additionally, Plaintiffs have failed to allege  special damages directly related to

or incurred because of the alleged (or, in this case, the non-alleged) false publication. To satisfy the special damages pleading requirement, a plaintiff must allege that the defendant's false publication " interrupted, or injuriously affected, some dealing of the plaintiff with his property" or caused the plaintiff to incur expenses "to relieve his right to the property from the damnifying effect of such false and malicious slander." *Ebersole v. Fields*, 62 So. 73, 75 (Ala. 1913) Special damages must be "distinctly and particularly set out" in the complaint, and "[a]n allegation of loss in general terms is not sufficient." *Id.* (holding that a complaint averring that the defendants falsely slandered the plaintiff's title followed by general allegations of monetary loss was insufficient). Plaintiffs merely state in broad general terms that BANA's conduct "was the proximate cause of injuries and damages ." (Doc. 22 ¶ 52.) This allegation does not describe with particularity the damages that resulted from the BANA's actions, and is therefore insufficient to state a claim for slander of title under Alabama law. For this and the other reasons articulated, Plaintiffs' state law claim for slander of title is due to be dismissed.

### C.   Count Three: Wantonness

Count Three of Plaintiffs' Complaint asserts a state law claim for wantonness. Plaintiffs make several allegations in support of their wantonness claim, including the

following: BANA acted with reckless indifference to the consequences of initiating foreclosure actions against Plaintiffs (Doc. 22 ¶ 54–55); BANA wantonly handled, serviced and processed payments, charges, fees, and other aspects of Plaintiffs' mortgages (*Id*. ¶ 56); and BANA knew these actions would result in financial and emotional injury to Plaintiffs. (*Id*. ¶ 57.)

The Court agrees with the Middle District of Alabama's recent assessment that "Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing." *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210–11 (M.D. Ala. 2012); *see also McClung v. Mortgage Elec. Registration Sys., Inc.*, 2:11-CV-03621-RDP, 2012 WL 1642209, at *7–8 (N.D. Ala. May 7, 2012) (following *Blake*); *Jackson v. Countrywide Home Loans, Inc.*, 2:11-CV-327-MEF, 2012 WL 777180, at *6–7 (M.D. Ala. Mar. 7, 2012) (same). As explained in *Blake*, "Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract" because "'a negligent failure to perform a contract . . . is but a breach of the contract.'" *Id*. (quoting *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1956)). "A plaintiff can only sue in tort when a defendant breaches the duty of reasonable care—the duty one owes to another in his day-to-day affairs—when such a breach causes personal injury or property damage." *Id*. (citing *Vines*, 85 So. 2d at 440).

The court in *Blake* determined that the mortgage servicer's obligations arose from the mortgage and promissory note to which the parties agreed, not from the duty of reasonable care generally owed to members of the public. *Blake*, 845 F. Supp. 2d at 1210. Accordingly, the borrower could not allege a tort claim based on negligent servicing of the mortgage. *Id.* Here, Plaintiffs allege that BANA "wantonly handled, serviced, and processed payments, charges, fees" associated with the mortgage. Inherent in this allegation is Plaintiffs contention that BANA owed Plaintiffs a duty to act reasonably in servicing their mortgage. As in *Blake*, the duties and breaches alleged by Plaintiffs clearly would not exist but for the contractual relationship between the parties. Moreover, there is no duty to the general public to properly service mortgage accounts. Because all the duties Plaintiffs contend BANA breached are based on contractual agreements between the parties, Plaintiffs' claim for wanton loan servicing and wanton foreclosure initiation are not legally cognizable under Alabama law.

Plaintiffs contend the line of cases cited above should not apply because, as the servicer of Plaintiffs' mortgage, BANA does not have a contractual relationship with Plaintiffs.[5] Even if Plaintiffs are correct, the Court's conclusion is nonetheless the

---

[5] Notably, this assertion conflicts with Plaintiffs attempt to assert a claim for breach of contract in Count Five.

same. The court in *Blake* addressed this potential issue, noting that a borrower still cannot allege a tort claim for a mortgage servicer's negligent conduct because an agent to an agreement can "only incur tort liability . . . by causing *personal injury or property damages*." *Blake*, 845 F. Supp. 2d at 1210 (emphasis added). Mere economic injury, in contrast, does not give rise to such liability. *Id.*; *see also* Restatement (Second) of Agency § 357 (1958) ("An agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed."). As in *Blake*, Plaintiffs have only alleged economic loss from Defendant's alleged breach of the duty of reasonable care, and because a tort claim for a breach of this duty must cause personal injury or property damage, Plaintiffs have not alleged a plausible tort claim. For the reasons stated, Plaintiffs' wantonness claim is due to be dismissed.

### D.    Count Four: Fraud - Intentional Misrepresentation

Count Four of the Complaint asserts a state law claim for fraudulent misrepresentation. Defendant asserts this claim is due to be dismissed for several reasons. First, Defendant contends Plaintiffs have failed to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). In addition to the standard discussed above, Rule 9(b) provides that for a claim "alleging fraud or mistake, a party

must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity required by the rule is satisfied when the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

In the subsection of the Complaint labeled "FRAUD - INTENTIONAL MISREPRESENTATION," Plaintiffs set out three alleged fraudulent representations:

> 61.  Defendant repeatedly misrepresented the facts to Plaintiffs including but not limited to:
>
> i.  Granting Plaintiffs a loan modification, but then reporting their loan as delinquent.
>
> j.  Confirming in writing that Plaintiffs had completed the modification trial period, only to claim later that they were denied.
>
> k.  Initiating a foreclosure proceeding

(Doc. 22. ¶ 61.) BANA argues that these allegations do not meet the pleading requirements articulated in *Ziemba*. There is no doubt that these allegations, taken alone, do not provide the level of detail required to satisfy Rule 9(b). In fact, these

allegations—particularly the first and third—are arguably not even representations in the first place, but rather actions taken by BANA to which Plaintiffs object.

Plaintiffs, however, argue that the specificity requirement is met if these allegations are considered in conjunction with the factual allegations set out in paragraphs 19 through 42, which were incorporated into the fraud claim by reference in paragraph 59. Those paragraphs provide the following factual information: in February 2010, Plaintiffs were informed over the phone that they qualified for a loan modification provided they successfully completed a trial plan, and they were instructed to pay a reduced amount going forward (*id.* ¶ 24); in October 2010, Plaintiffs received a letter from BANA informing them they had completed the trial period (*id.* ¶ 29); based on these representations, Plaintiffs continued making reduced loan payments until July 2011, when Defendant informed them they were in default and began the process of foreclosing on Plaintiffs' home. (*Id.* ¶ 30–33.)

Plaintiffs' pleading with respect to their fraud claim is certainly not commendable. A better complaint would have included the claim-specific facts relevant to Plaintiffs' fraud claim within the specific count alleging fraud. While it is true the Rules provide that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading," Fed. R. Civ. P. 10(c), exercise of that right can at

times be abused. Indeed, the practice of incorporating all previous paragraphs into a claim, then incorporating that claim and all preceding paragraphs into the next claim, and so on, has been consistently condemned by the Eleventh Circuit. *See Byrne v. Nezhat*, 261 F.3d 1075, 1129–34 (11th Cir. 2001).

Nevertheless, despite these issues, the Court is willing to consider the whole of Plaintiffs' Complaint to determine that they have adequately stated a claim for fraudulent misrepresentation. In particular, the Court finds sufficient Plaintiffs' allegations with respect to the letter mailed in October. The letter, which Plaintiffs attached as Exhibit A to the Complaint, provides most of the detail required by *Ziemba*. The face of letter provides that it was sent by BANA to Plaintiffs on October 6, 2010, and it states that BANA received the final installment for the trial period of the modification plan. (Doc. 22-1.) Plaintiffs further alleged in the Complaint that following receipt of this letter, they continued making reduced mortgage payments for the next nine months, until BANA informed them they were in default. (Doc. 22 ¶ 30.) As a result, BANA not only received the monthly mortgage payments, but also stood to gain whatever financial benefits could be reaped through foreclosure.

Based on the provisions of the Complaint discussed above, the Court finds Plaintiffs have presented "enough facts to state a claim that is plausible on its face."

*Twombly*, 550 U.S. at 570. The Eleventh Circuit has emphasized that the application of Rule 9(b) "must not abrogate the concept of notice pleading." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, Inc., 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba*, 256 F.3d at 1202). Rule 9(b) is satisfied where the Plaintiffs set forth "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (quoting Clausen, 290 F.3d at 1310)). Plaintiffs have set forth all that is required.

Defendant also contends that Plaintiffs have failed to adequately plead reasonable reliance. However, the pleadings demonstrate that following the alleged misrepresentations, Plaintiffs continued making reduced mortgage payments believing they had been approved for a modification. The Court finds that these allegations plead reliance in a manner sufficient to survive a motion to dismiss. Reasonable reliance may be a question for this Court to resolve at a later time, but not at this stage of the proceeding. Therefore Defendant's motion to dismiss is due to be denied with respect to Count Four.

### E.    Count Five: Breach of Contract

In Count Five, Plaintiffs assert a state law claim for breach of contract. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract

binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)).

Defendant argues that Plaintiffs' breach of contract claim should be dismissed because Plaintiffs have not alleged an enforceable, written contract to modify their loan. However, the Complaint contains an allegation that Plaintiffs signed loan modification documents provided by BANA in September 2010, and that they mailed those documents back to BANA after signing. (Doc. 22 ¶ 28.) Further, Plaintiffs contend that "Defendant breached the contract by accepting payments under the modification for more than a year, but failing to apply those payments to the account." (*Id.* ¶ 69.) This Court's sole task at this point in the litigation is to evaluate whether Plaintiffs' claim has satisfied the pleading standards. Plaintiffs have accomplished that task. Accordingly, Defendant's motion to dismiss is due to be denied with respect to Count Five.

### F.    Count Six: Negligence Per Se

Count Six of the Complaint is captioned "Negligence Per Se." As an initial matter, the Court recognizes there is no Alabama tort cause of action known as

negligence per se. Rather, negligence per se is merely a subsidiary doctrine of negligence whereby a party is considered negligent as a matter of law because it acted in violation of a statute which was designed to prevent the type of harm that occurred. *See Parker Bldg. Servs. Co. V. Lightsey*, 925 So. 2s 927, 930–31 (Ala. 2005). Despite captioning their relief as "negligence per se," Plaintiffs have failed to identify, either in their complaint or their brief, any applicable statute or regulation that has been violated. For that reason, Count Six is due to be dismissed. Furthermore, even if the Court takes Plaintiffs to be alleging simple common law negligence, the Complaint still fails to state a claim for which relief can be granted because, as described in Part IV.C, *supra*, the only duty Plaintiffs allege was breached was created by contract. *See Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1056 (Ala. 2003) (noting both negligence claims and wantonness claims have a duty element, and failure to establish a duty is fatal to both). Accordingly, Defendant's motion to dismiss is due to be granted with respect to Count Six.

### G.    Count Seven: Breach of Covenant of Good Faith and Fair Dealing

Defendant contends that Count Seven of the Complaint is due to be dismissed because Alabama law does not recognize claims for breach of the covenant of good faith and fair dealing outside the insurance policy context. Plaintiffs offered no

response to this argument in their brief, and therefore have abandoned this claim. *See Coal. for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326 ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."). Nonetheless, Defendant is correct that Alabama has clearly refused to acknowledge a claim for breach of the duty of good faith outside the insurance context. *See Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Ala. Power Co., Inc.*, 601 So. 2d 942, 944 (Ala. 1992) (quoting *Tanner v. Church's Fried Chicken, Inc.*, 582 So.2d 449, 451 (Ala.1991)) ("We are not prepared to extend the tort of bad faith beyond the area of insurance policy cases."). Thus, Defendant's motion to dismiss Count Seven is due to be granted.

### H. Count Eight: Unjust Enrichment

Defendant contends that Plaintiffs' claim in Count Eight for unjust enrichment is due to be dismissed because such relief cannot be granted where a matter is governed by contract. In *Vardaman v. Bd. of Educ.*, 544 So. 2d 962, 965 (Ala. 1989), the Alabama Supreme Court stated: "It has long been recognized in Alabama that the existence of an express contract generally excludes an implied agreement relative to the same subject matter." As with Count One & Count Seven, Plaintiffs failed to offer any response to Defendant's argument. Therefore, being abandoned by Plaintiffs, the

unjust enrichment claim is due to be dismissed. *See Coal. for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326; *Evans*, 2012 WL 1745610, at *10; *McMaster*, 177 F.3d at 940-41 (11th Cir.1999).

## I.   Count Nine: Violation of the FDCPA

Count Nine of the Complaint alleges that BANA violated the FDCPA by engaging in a pattern and practice of making false representations in an attempt to collect a debt. (Doc. 22 ¶ 92.) Defendant argues that Plaintiffs' FDCPA claim should be dismissed because the allegations in the complaint demonstrate that BANA is not a "debt collector" for purposes of the FDCPA.

To state a claim under the FDCPA, a plaintiff must establish, among other things, that the defendant is a "debt collector." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir.2012). The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692(a)(6). While BANA may or may not fit this description, 15 U.S.C. § 1692(a)(6)(F) excludes persons collecting a debt when the collection "concerns a debt which was not in default at the time it was obtained by such persons." Furthermore, the legislative history suggests that a mortgagee and its assignee, including mortgage

servicing companies, are not debt collectors under the FDCPA when the debt is not in default at the time the mortgage-holder acquires the debt. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95–382, at 3–4 (1977)).

In the Complaint, Plaintiffs attempt to avoid this exclusion and establish BANA's status as a debt collector by alleging that BANA "is collecting on debts that, by their own allegation, were in default at the time they were obtained." (Doc. 22 ¶ 91.) Defendant, however, contends this formulaic recitation is insufficient to survive a motion to dismiss because the other factual allegations in the Complaint clearly demonstrate that BANA began servicing Plaintiffs' mortgage loan before they were in default. Specifically, BANA points out that the Complaint alleges Plaintiffs contacted BANA to request assistance immediately after Mr. Prickett lost his job "despite being current on [their mortgage] payments." (Doc. 22 ¶ 23.) Defendant argues this allegation clearly shows that the loan was not in default at the time BANA began servicing it.

In response, Plaintiffs cited a notice mailed by BANA sometime in 2011, informing Plaintiffs that BANA was assuming the loan servicing obligations from its subsidiary, BAC Home Loans Servicing, LP. (Doc. 26-2 at 1.) The letter further provided that "Under the federal Fair Debt Collections Practices Act and certain state

laws, [BANA] is considered a debt collector." (*Id.*) Plaintiffs are essentially contending that this letter *per se* establishes that BANA is a debt collector under the FDCPA, or at the least, should preclude BANA from denying as much.

An initial problem with Plaintiffs' reliance on this notice is that it was not attached to the Complaint, but rather presented for the first time in response to Defendant's motion to dismiss. While the Court accepts all well-pleaded facts in the complaint as true for purposes of a Rule 12(b)(6) motion to dismiss, it must confine its review to those facts contained within the four corners of plaintiff's pleading. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (internal citation omitted) ("A court's review on a motion to dismiss is limited to the four corners of the complaint."). Thus, because the notice is outside the scope of this Court's review, it cannot save Plaintiffs' claim.

Furthermore, even if the notice had been attached to the Complaint, the Court is unconvinced the notice alone is enough to establish BANA's status as a debt collector under the FDCPA. Although not binding, the Court finds instructive the decision and analysis of the district court in *Muniz v. Bank of Am., N.A.*, 2012 WL 2878120 (S.D.N.Y. July 13, 2012). The plaintiffs in *Muniz* received a virtually identical letter from BANA and, unlike Plaintiffs in the case *sub judice*, attached the letter to

their complaint. However, aside from the letter, the remaining provisions of the complaint failed to allege facts demonstrating that the loan was in default at the time BANA began servicing it. *Id.* at * 5. Despite that the letter stated BANA was a debt collector under the FDCPA, the district court dismissed the plaintiffs' claim for failure to allege facts demonstrating BANA was a debt collector within the meaning of the statute. *Id.* at *6.

The import of the decision in *Muniz*, to which this Court agrees, is that the relevant test of whether an entity is a debt collector under the FDCPA is whether the statutory definition applies, not whether the entity has ever stated in a document that it is a debt collector. Thus, to survive a motion to dismiss, a complaint must allege facts demonstrating that the defendant obtained the debt **after** the plaintiff was in default. Plaintiffs did not make such factual allegations, and, in fact, pled facts tending to show that BANA began servicing the loan **before** it was in default.

Because the Complaint fails to allege facts showing the BANA is a debt collector within the meaning of the FDCPA, Plaintiffs' claim for violation of the FDCPA is subject to dismissal. However, rather than immediately dismissing Plaintiffs' claim, the Court will allow Plaintiffs an opportunity to amend their Complaint to allege facts satisfying the elements of the cause of action which are

currently lacking, if such facts exist. Plaintiffs are reminded that by filing an amendment, the party signing the filing certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). In other words, if the evidence does not support an amendment, none should be made. Plaintiffs have ten (10) days from the date of this Order to file their amendment. Failing to amend, the Court will enter an order dismissing Plaintiffs' FDCPA claim.

## V.    Conclusion

For the foregoing reasons, BANA's Motion to Dismiss (Doc. 23) is GRANTED in part, DENIED in part, and partially DEFERRED to allow Plaintiffs an opportunity to amend. A separate order will be entered consistent with this opinion.

Done this 21st day of May 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]